IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 14-cv-02392-LTB

ERNIE BEVERLY,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

_____

## ORDER
_____

Plaintiff Ernie Beverly appeals Defendant's (the "Commissioner") final administrative decision denying his claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). Jurisdiction in this appeal is proper pursuant to 42 U.S.C. § 405(g). Oral argument would not materially assist in the determination of this appeal. After consideration of the briefs and the record, I affirm the Commissioner's decision.

## I. Statement of the Case

A hearing on Plaintiff's claim was held before an administrative law judge (the "ALJ") on January 3, 2013. On January 10, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. The Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's January 10, 2013 decision the Commissioner's final decision for purposes of my review. Plaintiff timely filed this appeal seeking review of the Commissioner's final decision.

## II. Statement of Facts

### A. Background

Plaintiff was born on September 4, 1958, making him 50 years old at the time of his alleged disability onset date of April 29, 2009. Administrative Record ("AR") 26. Plaintiff has high school education and has worked in the past as a security guard and as a janitor. *Id.* Plaintiff alleged disability due to a shoulder injury suffered on the job. AR 241.

### B. Relevant Medical Evidence

Plaintiff's November 20, 2008 on-the-job, left shoulder injury was first treated with physical therapy. AR 532-545. Plaintiff had surgery on his left shoulder on April 30, 2009 but reported that the surgery failed to improve his symptoms. AR 320. On September 14, 2009, Plaintiff was assessed with persistent pain and decreased range of motion in his left shoulder. *Id.* An MRI showed evidence of subacromial bursitis; anterior acromial spur; acromioclavicular arthritis; and an inferiorly directed distal clavicle spur. AR 308.

On December 1, 2009, Michael Hewitt, M.D., performed an arthroscopy with revision subacromial decompression, distal clavicle coplaning, and superior labral debridement on Plaintiff's left shoulder. AR 308. Plaintiff continued with physical therapy after the December 1, 2009 shoulder surgery but was no longer improving as of March 25, 2010. AR 326 - 401.

In April of 2010, Plaintiff was evaluated by Albert Hattern, M.D., in connection with his workers' compensation claim. With respect to Plaintiff's work capabilities, Dr. Hattern referred to a functional capacity evaluation completed by Select Physical Therapy on April 19, 2010. AR 549. This evaluation stated that Plaintiff could frequently reach in all directions. AR 552.

Plaintiff reported right knee pain in October of 2010, and an x-ray showed "[s]uperficial soft tissue swelling overlying the anterior proximal tibia" that "could represent bursitits" and

"[c]orticated fragment likely accessory ossificiation center or old truama." AR 657 & 659. X-rays were again taken of Plaintiff's right knee, as well as his left toe and shoulder in September of 2012. AR 598-600. These x-rays showed no acute osseus abnormality or significant degenerative change in Plaintiff's right knee (AR 599); moderate degenerative change in Plaintiff's left toe (AR 598); and the evolution of Plaintiff's "degenerated left AC joint ... from a pattern of cortical irregularity on either side of the joint to a smoother appearance of the cortex with minimal penciling of the lateral clavicle" in Plaintiff's left shoulder (AR 600).

At a consultative exam performed by Jennifer Lomonaco McClean, M.D., on June 1, 2011, Plaintiff reported that he was able to cook, clean, and care for himself and responded appropriately during the exam. AR 579-80. Dr. McCLean opined that Plaintiff had no manipulative restrictions with his right arm and could have "occasional activity" with his left arm but was "unlikely to be able to participate in any overhead activity." AR 583. Dr. McClean further stated that she did not question Plaintiff's ability to participate in a complex or stressful work environment. *Id.*

**C. Plaintiff's Disability Hearing**

A hearing was first scheduled on Plaintiff's disability claim for October 15, 2012 but was continued to January 3, 2013 so that Plaintiff could obtain new counsel. AR 34-5. At the hearing on January 3, 2013, Plaintiff testified that his ability to work was affected by his left shoulder that he injured on the job and by pain in his right knee and left toe. AR 47- 50. Plaintiff testified that he was performing his current, part-time job as a janitor by using his right arm only and that he had to take 15-30 minutes breaks every one and a half hours during his five hour shift. AR 63-64. Plaintiff further testified that he was in special education classes at school

because he was a slow learner and that he had some difficulties with reading and spelling but was able to fill out his SSA paperwork by himself.  AR 70-1.

The vocational expert ("VE") testified that Plaintiff had worked in the past as a security guard, janitor, and commercial cleaner.  AR 72 & 77.  The ALJ then asked the VE hypothetical questions based on a person of the same age, education, and vocational experience as Plaintiff who could perform a full range of work with the following restrictions:

> not required to lift more than 20 pounds occasionally and ten pounds frequently; not required to lift and carry more than five pounds solely with the left, upper, non-dominant extremity; not required to stoop, balance, crouch or climb stairs and ramps more than occasionally; not required to climb scaffolds, ladders, and ropes, crawl or kneel; not required to sit more than 6 hours out of an 8-hour workday; not required to sit for more than an hour at a time without the opportunity to stand; not required to sit stand or walk for more than 4 hours out of an 8-hour workday; not required to work above shoulder level with the upper left, non-dominant extremity; not required to repetitively push/pull or perform extended reaching with the left, non-dominant extremity; not required to work at unguarded heights or near unguarded, hazardous, mechanical equipment, [and] not required to operate motorized vehicles.

AR 78-9.  The VE responded that a person as described by the ALJ could not perform Plaintiff's past relevant work but could work as a cashier II or a merchandise marker.  AR 79.

On follow up questioning to the VE, Plaintiff's attorney added a restriction of no more than occasional reaching in all directions with the left, non-dominant upper extremity.  AR 81-2.  The VE responded that she could not identify any light jobs for such a hypothetical person.  AR 82.

**D.  The ALJ's Decision**

In his ruling, the ALJ applied the five-step sequential process outlined in 20 C.F.R. §§ 404.1520(a).  At the first step of the sequential process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of April 29, 2009

but was working 5 hours a day doing light exertional work as a janitor. AR 21. At the second step, the ALJ determined that Plaintiff had severe impairments of pain in his left shoulder, low back, left toe, and right knee. *Id.* At the third step, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22.

The ALJ next determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) but should not be required to (1) lift and carry more than 5 pounds solely with the left upper non-dominant extremity; (2) stoop, balance, crouch or climb stairs and ramps more than occasionally; (3) sit more than 6 hours in an 8-hour workday; (4) sit more than 1 hour at a time without an opportunity to stand; (5) stand/walk more than 4 hours in an 8-hour workday; (6) work above shoulder level with the upper left non-dominant extremity; (7) repetitively push, pull, or perform extended reaching with the upper left non-dominant extremity; (8) work at unguarded heights or near unguarded hazardous mechanical equipment; and (9) operate a motorized vehicle. AR 22-3. Based on the assessed RFC, the ALJ concluded that Plaintiff was unable to perform any past relevant work but could work at other jobs existing in significant numbers in the national economy such as cashier II and merchandise marker. AR 26-27. Thus, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Act from April 29, 2009 through the date of his decision. AR 27.

### III. Standard of Review

In reviewing the Commissioner's decision, I must determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028

(10th Cir. 1992); *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hamilton, supra,* 961 F.2d at 1498.  I "may neither reweigh the evidence nor substitute [my] discretion for that of the Administrative Law Judge."  *Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir. 1995).

## IV.  Analysis

On appeal, Plaintiff argues that the ALJ erred (1) by failing to find that Plaintiff's mental impairment meets or equals the severity of Listing 12.05, 20 C.F.R., part 404, subpart P, Appx. 1, and to develop the record on this issue; (2) by finding that Plaintiff had restrictions with the use of his left arm that were imprecise, unclear, and not supported by substantial evidence in the record; and (3) by finding that there were jobs existing in significant numbers in the national economy that Plaintiff was capable of performing.

### A.  Listing 12.05

In his decision, the ALJ noted that Plaintiff was in special education classes; had some speech problems; and had testing which indicated that he was functioning "at the mildly retarded range."  AR 22.  The ALJ further noted, however, that Plaintiff completed the disability report independently and had performed work in the past that qualified as substantial gainful activity at the semi-skilled level.  *Id.*  The ALJ then concluded that Plaintiff's mental impairment was not a severe impairment that would preclude him from performing unskilled work and that Plaintiff's impairments, either individually or collectively, did not meet or equal a medical listing.  *Id.*

On appeal, Plaintiff first argues that there was substantial evidence establishing that he meets the requirements of Listing 12.05(c).  I disagree.

Listing 12.05, 20 C.F.R. 404, Subpt. P, Appx. 1, provides that "intellectual disability," termed "mental retardation" at the time of the ALJ's decision, refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.* the evidence demonstrates or supports onset of the impairment before age 22." A claimant must also satisfy one of the following four criteria to have an "intellectual disability" under Listing 12.05:

> A. Medical incapacity evidenced by dependence upon others for personal needs ... and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR

> B. A valid verbal, performance, or full scale IQ of 59 or less; OR

> C. A valid verbal, performance , or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR

> D. A valid verbal, performance, or full scale IQ of 60 through 70 resulting in at least two of the following:

> 1. Marked restriction of activities of daily living; or

> 2. Marked difficulties in maintaining social functioning; or

> 3. Marked difficulties in maintaining concentration, persistence, or pace; or

> 4. Repeated episodes of decompensation, each of extended duration.

Plaintiff argues that he satisfies the criteria set forth in section C based on IQ scores from his childhood and the ALJ's finding that he has severe impairments due to left shoulder, low back, left toe, and right knee pain. However, the regulations provide that "IQ test results must be sufficiently current for accurate assessment under [Listing 12.05]." The regulations further provide that IQ test results obtained between the ages of 7 and 16 should be considered current for 2 years when the IQ score is 40 or above. 20 C.F.R. Pt. 404, subpt. P, appx. 1, §

112.00(D)(10). Thus, the IQ scores that Plaintiff relies on are not sufficiently current to support a finding that Plaintiff satisfies the section C criteria of Listing 12.05.

Plaintiff also fails to meet the capsule definition of Listing 12.05. "Deficits in adaptive functioning" means that an individual has significant limitations in at least two of the following skill areas: communication, self care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. Amer. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 42 (4th ed.). Plaintiff bears the burden of presenting evidence establishing that his impairment meets or equals a listed impairment, *Fisher-Ross v. Barnhart,* 431 F.3d 729, 733 (10th Cir. 2005), but presented no evidence that he had *significant* limitations in any of these areas. To the contrary, the evidence shows that Plaintiff graduated from high school though enrolled in special education classes, cares for himself, and was able to maintain consistent employment in semi-skilled security and janitorial positions prior to his on-the-job physical injury in 2009. AR 249 & 579. There are also no medical records to support a finding that Plaintiff suffered from an intellectual disability.

Because Plaintiff failed to present evidence to support a finding that his mental impairment met the requirements of Listing 12.05, the ALJ likewise did not err if failing to further develop the record on this issue.

**B. Restrictions Assessed by the ALJ for Plaintiff's Use of his Left Arm**

Plaintiff first argues that the ALJ erred by stating that he could "not ... repetitively push, pull or perform extended reaching with the left, non-dominant upper extremity" since the *Dictionary of Occupational Titles* ("DOT") classifies the frequency of tasks as constantly, frequently, and occasionally and does not use the terms repetitively. I disagree.

Based on both the DOT and her 20 years of experience as a vocational rehabilitation counselor, the VE cited two jobs, cashier II and merchandise marker, that Plaintiff was capable of performing. AR 79-80. Both of these jobs require reaching "frequently" *See* DOT §§ 209.587-034 & 211.462-010. Thus, it may be inferred that the VE interpreted the ALJ's use of the term "repetitively" to preclude Plaintiff only from jobs that required the constant use of his left arm for the identified tasks.

Plaintiff's attorney did not question the VE or seek clarification from the ALJ regarding the meaning of the term "repetitively." Plaintiff's attorney did, however, question the VE about whether Plaintiff could work as a cashier II or merchandise marker if he was limited to only occasional reaching in all directions, AR 81-2, thereby demonstrating a similar interpretation of the term "repetitively" to allow for at least frequent performance of reaching activities with Plaintiff's left arm. Under the circumstances then, I conclude that the record is clear that the term "repetitively" was considered by all parties to be equivalent to "constantly."

Plaintiff next argues that the ALJ's finding that he was capable of more than occasional tasks with his left arm is not supported by substantial evidence in the record. Again, I disagree.

Plaintiff asserts that the evidence in the record regarding Plaintiff's ability to use his left arm is limited to the opinions of Dr. McClean and his physical therapist which were adopted by Dr. Hattern. While Dr. McClean opined that Plaintiff was limited to "occasional activity" with his left arm, Dr. Hattern adopted the opinion of Plaintiff's physical therapist that Plaintiff could frequently reach in all directions. AR 549, 552, & 583. In addition to these opinions, the ALJ considered Plaintiff's credibility and complete medical history. AR 23-6. Based on the record as a whole, I conclude that there is substantial evidence in the record to support the the ALJ's

9

finding that Plaintiff was capable of more than occasional pushing/pulling and extended reaching with his left arm.

## C.  The ALJ's Finding That There Were Sufficient Jobs Available to Plaintiff

Plaintiff argues that the ALJ erred in finding that there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing because he failed to account for Plaintiff's limitation that he "not [be] required to work above shoulder level with the upper left, non-dominant extremity." I disagree.

In her hearing testimony, the VE acknowledged that the DOT did not address all of the restrictions identified by the ALJ in his hypothetical question. AR 80. The VE further testified that she relied on her 20 years of experience as a vocational rehabilitation counselor with regard to these restrictions. *Id.*  Thus, in opining that Plaintiff was capable of working as a cashier II or merchandise marker, it may be assumed that the VE accounted for Plaintiff's limitation of no work above shoulder level with his left arm based on her professional experience. It follows that the ALJ did not err in relying on the VE's testimony in finding that there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing with the RFC assessed for him including the limitation of no reaching above shoulder level with his left arm.

## V.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED.

Dated: February 22, 2016 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE